UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE LAWTONE-BOWLES, Plaintiff, -v.- CITY OF NEW YORK, Defendant. | 25 Civ. 5762 (KPF) **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Nicole Lawtone-Bowles, who is proceeding *pro se*, brought this action against the City of New York to seek redress for its allegedly unlawful employment practices.[1] In her First Amended Complaint (or "FAC"), the operative pleading in this case, Plaintiff alleges causes of action under (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, (ii) the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796, (iii) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, (iv) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-301, (v) the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code tit. 8, (vi) New York Civil Service Law § 55-a, and (vii) New York City Civil Service Rule 6.1.9.

[1] In her case-initiating Complaint (Dkt. #1), Plaintiff named the City of New York, the City of New York Department of Homeless Services ("DHS"), and the City of New York Department of Social Services ("DSS") as Defendants. During the pre-motion conference held on November 5, 2025, the Court informed Plaintiff that DHS and DSS are not separately suable entitles. (Dkt. #37 ("PMC Tr.") at 4:7-15). Despite Plaintiff's listing of DHS and DSS as parties to this action in her First Amended Complaint ("FAC") (*see* FAC ¶¶ 6-7), they are not named in the caption of the FAC and are indeed non-suable entities. *See* N.Y.C. Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."). Therefore, to the extent that DHS and DSS remain Defendants in this case, the Court dismisses them now and only considers Plaintiff's claims against the City of New York.

Before the Court is Defendant's motion to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court grants the motion as to Plaintiff's federal claims, and declines to exercise jurisdiction over Plaintiff's state and municipal claims.

## BACKGROUND[2]

### A. Factual Background

#### 1. Plaintiff Is Employed as a Motor Vehicle Operator

Plaintiff began working for the City of New York as a Motor Vehicle Operator for the Department of Homeless Services in August 2013. (FAC ¶ 8). In September 2014, after leaving work, Plaintiff sustained serious knee injuries in an automobile accident (*id.*), requiring knee replacements in 2015 and 2017 (Pl. Opp. 8).[3] Plaintiff was able to return to work in 2015 with some accommodations (FAC ¶ 9), but her injuries — and subsequent fibromyalgia

---

[2] This Opinion draws its facts primarily from the FAC, the substance of which starts at page 19 of docket entry 35. The well-pleaded allegations of the FAC are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Further, the combined exhibit to the FAC (Dkt. #36) is incorporated by reference in the FAC. *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint). The Court also relies, as appropriate, on statements made at the November 5, 2025 pre-motion conference ("PMC Tr."), as well as the exhibits attached to the Declaration of Shemori S. Corinthian in support of Defendant's motion to dismiss ("Corinthian Decl., Ex. [ ]" (Dkt. #39)).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #39); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #40); and to Defendant's reply memorandum of law as "Def. Reply" (Dkt. #45).

[3] "[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint." *Brooks* v. *Jackson*, No. 11 Civ. 6627 (JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013).

diagnosis — continued to cause pain, fatigue and other symptoms, limiting Plaintiff's "walking, standing, lifting, traveling, and working[.]" (*Id.* ¶ 8).

Plaintiff also alleges that, in 2019, her supervisor "made disparaging remarks about [her] physical condition and female gender" and sexually assaulted her by "physically grop[ing] and touch[ing] her without consent[.]" (FAC ¶¶ 16-17). Plaintiff reported the harassment and requested a transfer to a different unit or shift to avoid further contact with the offending supervisor; her request was denied. (*Id.* ¶¶ 18-19).

### 2. Plaintiff Is Placed on "AWOL" Status

In 2019, Plaintiff suffered an on-the-job injury (FAC ¶ 10), materially worsening her condition (Pl. Opp. 8). Believing that she could not safely operate a vehicle, Plaintiff requested reassignment to either a remote position or a position on the midnight shift at the Bronx PATH intake center "more compatible with her physical limitations." (FAC ¶¶ 10-11). When Defendant refused to reassign Plaintiff, she did not return to work. (*Id.* ¶ 13).

On January 1, 2020, Defendant placed Plaintiff on "absent without leave" ("AWOL") status. (FAC ¶ 14). While AWOL, Plaintiff did not receive salary or benefits, resulting in her eventual homelessness, loss of health insurance coverage (which in turn exacerbated her existing health conditions), and filing for personal bankruptcy. (*Id.* ¶¶ 24-25).[4] Plaintiff attempted to find other employment opportunities with Defendant, taking and passing several New

---

4 In 2021, Plaintiff was awarded workers' compensation because of her "permanent partial disability." (Pl. Opp. 35).

York City civil service examinations to enhance her qualifications. (*Id.* ¶ 21). However, Plaintiff was never interviewed or selected for any positions, allegedly because of her "effective[ ] exclu[sion] or blacklist[ing]" for City positions due to her AWOL status. (*Id.* ¶ 22).

### 3. Plaintiff Is Reassigned

On November 10, 2025, Plaintiff was reassigned to a desk-based clerical position. (Pl. Opp. 5).

Since her reassignment, Plaintiff has made several formal complaints over email, which complaints are contained as exhibits to her opposition brief. *First*, throughout November 2025, Plaintiff submitted to Defendant documentation from her physician prescribing her a three-day-per-week hybrid work schedule to "attend required therapy sessions and manage [her] medical condition," which accommodations she claimed in December 2025 and January 2026 had not yet been implemented. (Pl. Opp. 61-70). *Second*, on January 28, 2026, Plaintiff alleges that she was "informed by a reliable source that [her coworker] made inappropriate and disparaging statements about [her] to another employee" by "question[ing] [her] presence and role as a Clerical Associate IV and ma[king] insinuations regarding how [she] obtained [her] position," which she alleges "contribute to a hostile work environment." (*Id.* at 58-60). *Third*, after Plaintiff was transferred to the Bronx at her request, she was informed on January 29, 2026, that her transfer was in error, as there were no positions available. (*Id.* at 47-57). Plaintiff was therefore ordered to

report back to work in downtown Manhattan, which she alleges violates her reasonable accommodations. (*Id.*).

## B. Procedural History

### 1. Plaintiff Brings Claims Before the SDHR

From 2019 through 2020, Plaintiff filed several complaints with the New York State Division of Human Rights ("SDHR"). (Corinthian Decl., Ex. B at 8). In those complaints, Plaintiff alleged, among other things, that Defendant, its entities, and its employees had "subjected her to sexual harassment" and "failed to provide her with a reasonable accommodation for her disability[.]" (*Id.*). Plaintiff's complaints were consolidated and heard before an Administrative Law Judge who, on July 31, 2024, issued Recommended Findings of Fact, an Opinion and Decision, and an Order dismissing all of Plaintiff's complaints. (*See generally* Corinthian Decl., Ex. B).

### 2. Plaintiff Files a Charge of Discrimination with the EEOC

Plaintiff also pursued relief through federal channels. On July 8, 2025, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Corinthian Decl., Ex. C). In her charge, Plaintiff detailed that she went to work on April 8, 2025, and was offered the opportunity to return to her position as a Motor Vehicle Operator. (*Id.* at 1). Plaintiff explained that she believed she needed a clerical position, and was told that she would "have to wait for the internal EEOC process." (*Id.*). Plaintiff was ultimately offered a clerical associate position, which she accepted, but as of the charge date, she was still "waiting to be put back to work." (*Id.*).

On July 10, 2025, the EEOC notified Plaintiff that it would not proceed further with its investigation and provided Plaintiff with a right-to-sue letter. (FAC at 49).

**3. Plaintiff Files Her Complaint in This Court**

On the same day she received her right-to-sue letter from the EEOC, Plaintiff initiated this action by filing her Complaint. (Dkt. #1). On October 20, 2025, after receiving an extension of time from the Court to answer the Complaint (Dkt. #27), Defendant filed a request for a pre-motion conference regarding its anticipated motion to dismiss under Federal Rule of Civil Procedure 12(b) (Dkt. #28), to which Plaintiff responded the same day (Dkt #29). The Court granted Defendant's request on October 21, 2025, setting the pre-motion conference for November 5, 2025. (Dkt. #30).

At the pre-motion conference, the Court discussed with Plaintiff existing deficiencies in her Complaint. (*See generally* PMC Tr.). Most importantly, the Court learned that, despite allegations in the Complaint that centered on conduct from 2019, Plaintiff's lawsuit primarily concerned conduct that began in 2025. (PMC Tr. 38:18-39:2). The Court granted Plaintiff leave to amend her Complaint — her "last and final" bite at the apple — by December 31, 2025. (*Id.* at 42:7-12). Plaintiff filed the FAC on November 8, 2025. (Dkt. #35).

**4. The Instant Motion**

At the pre-motion conference, the Court also set a briefing schedule for Defendant's motion to dismiss. Defendant filed its motion and supporting papers on February 6, 2026. (Dkt. #39). Two days later, Plaintiff filed her

opposition. (Dkt. #40). After requesting and receiving an extension of time (Dkt. #42-43), Defendant filed its reply on April 27, 2026 (Dkt. #45). That same day, Plaintiff requested leave to file a sur-reply (Dkt. #46), which motion the Court denied on April 28, 2026 (Dkt. #48).

## DISCUSSION

### A. Applicable Law

Under Rule 12(b)(1), a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving such a motion, the district court "may refer to evidence outside the pleadings." *Id.* In addition, as the party asserting subject matter jurisdiction, the plaintiff bears "the burden of proving by a preponderance of the evidence that it exists." *Id.*; *see generally Charles* v. *Excess Telecom*, Nos. 24 Civ. 9181 (KPF), 25 Civ. 702 (KPF), 2026 WL 1492867, at *3 (S.D.N.Y. May 28, 2026) (discussing facial and fact-based challenges to subject matter jurisdiction under Rule 12(b)(1)).

On a Rule 12(b)(6) motion, the court "draw[s] all reasonable inferences in [the plaintiff's] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). A plaintiff is

entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Indeed, a plaintiff must do more than provide a "formulaic recitation of the elements of a cause of action" — that is, her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *pro se* cases, the court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)). The Supreme Court has instructed that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)). At the same time, even "a *pro se* complaint must state a plausible claim for relief." *Walker* v. *Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## B. Analysis

### 1. The Court Dismisses Plaintiff's Hostile Work Environment and Sexual Harassment Claims Under Title VII As Procedurally Defective

Plaintiff brings claims under Title VII alleging a hostile work environment and sexual harassment. (FAC ¶¶ 42-48). These claims are based on two alleged sets of conduct: (i) harassment by her supervisor in 2019 (*id.* ¶¶ 16-17) and (ii) "inappropriate and disparaging statements" made by two of Plaintiff's coworkers regarding her reassignment that Plaintiff learned of in January 2026 (Pl. Opp. 58-60). Each suffers from fatal procedural defects.

Plaintiff argues that her hostile work environment claims should be subject to the continuing violation doctrine (Pl. Opp. 5-6), which would allow her to bring 2019 claims that would otherwise be time-barred, 42 U.S.C. § 2000e-5(e)(1) (requiring a plaintiff pursuing Title VII claims to file an administrative charge within 300 days of any alleged violations). The continuing violation doctrine is implicated "so long as [plaintiff's claims] either are sufficiently related to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations period." *Ciotti* v. *City of New York*, No. 23 Civ. 10279 (ER), 2025 WL 308022, at *9 (S.D.N.Y. Jan. 27, 2025) (internal quotation marks omitted) (quoting *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 105 (2002)). However, "[a]n unrelated discrete act, different in kind from the conduct giving rise to the hostile environment, does not trigger the continuing violation doctrine." *King* v. *Aramark Servs. Inc.*, 96 F.4th 546, 561

(2d Cir. 2024). The two alleged sets of conduct here — alleged sexual harassment and coworkers questioning how Plaintiff obtained her position — are sufficiently "different in kind," and thus do not implicate the continuing violation doctrine. *Id.*

Plaintiff's harassment allegations are thus plainly time-barred. Plaintiff brought her EEOC charge six years after the alleged harassment by her supervisor in 2019 — well outside of the 300-day limitations period. *See, e.g.*, *Hill* v. *Major League Soccer LLC*, No. 23 Civ. 2911 (JGK), 2024 WL 3361216, at *7 (S.D.N.Y. July 10, 2024) (dismissing plaintiff's claims as time-barred under Rule 12(b)(6) because they fell "outside of the 300-day period before the filing of the EEOC claims").

As for her post-reassignment hostile work environment allegations, Plaintiff has not exhausted her administrative remedies. "A court may only entertain Title VII claims that were raised in or are reasonably related to the claims in the plaintiff's EEOC charge." *Fleming* v. *Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005) (citing *Deravin* v. *Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)). While Plaintiff did file a charge of discrimination with the EEOC here, as described above, her charge related only to Defendant's failure to reasonably accommodate her disability. Contrary to Plaintiff's suggestion, the EEOC's investigation into Plaintiff's reassignment to a desk job would not "reasonably encompass … allegations of … [a] hostile work environment." (Pl. Opp. 12). Indeed, it could not have: Plaintiff's EEOC charge was filed in July 2025, whereas Plaintiff's qualifying hostile work environment allegations —

given the inapplicability of the continuing violation doctrine — occurred after Plaintiff's reassignment in November 2025. Therefore, Plaintiff's post-reassignment Title VII claims, lacking any nexus to the claims raised in her EEOC charge, must also be dismissed pursuant to Rule 12(b)(6). *See Fleming*, 419 F. Supp. 2d at 462; *see also Vaughn* v. *N.Y.C. Transit Auth.*, No. 25 Civ. 683 (LTS), 2026 WL 878722, at *6 (S.D.N.Y. Mar. 31, 2026) ("Where, as here, 'nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.'" (quoting *McCoy* v. *Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003))).[5]

### 2. The Court Dismisses Plaintiff's Failure to Accommodate, Retaliation, and Disparate Treatment Claims Under the ADA and Rehabilitation Act As Procedurally Defective

Plaintiff asserts several causes of action under the ADA and Rehabilitation Act.[6] *First*, Plaintiff alleges that Defendant failed to

---

[5] In any event, Plaintiff fails to properly state a claim for post-reassignment hostile work environment. To do so, the alleged conduct must be "so 'severe or pervasive as to create an objectively hostile or abusive work environment.'" *Gonzalez* v. *Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Patterson* v. *Cnty. of Oneida,* 375 F.3d 206, 227 (2d Cir. 2004)). The workplace incident described by Plaintiff in her January 28, 2026 email correspondence — that, on one occasion, a coworker "made insinuations regarding how [Plaintiff] obtained [her] position" (Pl. Opp. 59) — is not sufficiently severe or pervasive to state a claim for hostile work environment.

[6] Plaintiff's FAC does not list the Rehabilitation Act within her causes of action. Nonetheless, the Court considers these claims as one in the same as Plaintiff's ADA claims. *See, e.g.*, *Fulton* v. *Goord*, 591 F.3d 37, 42 n.1 (2d Cir. 2009) (finding lower court's consideration of Rehabilitation Act claims, where *pro se* plaintiff only brought ADA claims, proper "because such complaints are to be construed liberally and the same factual allegations generally will support both ADA and Rehabilitation Act claims." (citations omitted)); *Peters* v. *Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 n.2 (2d Cir. 2003) ("[T]he Rehabilitation Act provides that '[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination … shall be the standards applied under … the [ADA].'" (quoting 29 U.S.C. § 794(d))).

accommodate her disability by rejecting her request to transfer to a clerical role, work remotely, or work from the Bronx intake center. (FAC ¶¶ 28-34). *Second*, Plaintiff asserts that Defendant's failure to accommodate was retaliation for her accommodation requests and for reporting her supervisor for sexual harassment. (*Id.* ¶¶ 35-41). *Third*, Plaintiff alleges that, because she did not receive accommodations that Defendant provided to other employees without disabilities, she was discriminated against on the basis of her disability. (*Id.* ¶¶ 49-54).

Each cause of action is predicated on Defendant's failure to accommodate. Plaintiff alleges that she sought but was denied reasonable accommodations on four occasions: (i) Defendant refused to reassign Plaintiff to a remote position or a vacant position at the Bronx intake center "more compatible with her physical limitations" in 2019 (FAC ¶ 11); (ii) Defendant refused to reassign Plaintiff to a clerical position in 2025 (Corinthian Decl., Ex. C at 1); (iii) Defendant refused to approve Plaintiff's proposed hybrid work schedule prescribed by her physician after her reassignment (Pl. Opp. 61-70), and (iv) Defendant refused to transfer Plaintiff from downtown Manhattan to the Bronx in 2026 (*id.* at 47-57).

As with Title VII, a plaintiff bringing suit under the ADA or Rehabilitation Act must file a charge with the EEOC within 300 days of the alleged unlawful practice. *Graziosac* v. *New York City*, 29 F. App'x 691, 692-93 (2d Cir. 2002) (summary order) (citing 42 U.S.C. § 2000e-5(e)(1)). Plaintiff's July 2025 EEOC charge predates the conduct that is the subject of her third and fourth claims.

Therefore, the Court cannot consider Plaintiff's post-reassignment claims, for which she has not exhausted her administrative remedies. *See, e.g.*, *Holland* v. *City of New York*, No. 10 Civ. 2525 (PKC) (RLE), 2011 WL 6306727, at *4-5 (S.D.N.Y. Dec. 16, 2011) (dismissing ADA claims under Rule 12(c) for failure to exhaust administrative remedies with the EEOC).[7]

As to the relevant pre-reassignment conduct, Plaintiff argues, as above, that her claims are subject to the continuing violation doctrine. (Pl. Opp. 5-6). However, as with hostile work environment claims under Title VII, the continuing violation doctrine does not apply to discrete discriminatory acts, which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Wright* v. *City of New York*, No. 23 Civ. 3149 (KPF), 2024 WL 3952722, at *4 (S.D.N.Y. Aug. 27, 2024) (internal quotation marks omitted) (quoting *Morgan*, 536 U.S. at 113). In *Morgan*, the Supreme Court recognized "denial of transfer" as a "discrete discriminatory act." 536 U.S. at 114. As such, Defendant's failure to transfer Plaintiff from her Motor Vehicle Operator position is not a continuing violation, rendering the 2019 denial, which falls well outside of the 300-day window, time-barred.

That leaves Defendant's April 2025 initial denial of Plaintiff's request for a clerical position. However, "repeated requests for the same accommodation or requests for reconsideration of a denial of an accommodation do not restart

[7] While Plaintiff does assert in an email dated January 30, 2026, that she "will be filing a complaint with the Equal Employment Opportunity Commission for failure to accommodate" as a result of Defendant's rescinding of her transfer to the Bronx (Pl. Opp. 52), there is no evidence in the record that such a complaint has been filed, nor that Plaintiff has received a right-to-sue letter from the EEOC.

the clock under the ADA." *Ross* v. *New York*, No. 15 Civ. 3286 (JPO), 2017 WL 354178, at *2 (S.D.N.Y. Jan. 24, 2017) (citing *Elmenayer* v. *ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003)).[8] Plaintiff's April 2025 demand is substantively identical to her request for reassignment in 2019. (*Compare* FAC ¶ 11 (requesting reassignment to a remote position or a vacant position "more compatible with her physical limitations" at the Bronx intake center in 2019), *with* Corinthian Decl. Ex. C at 1 (requesting clerical position in 2025)). Therefore, Plaintiff's "repeated request[ ]" or "request[ ] for reconsideration" in April 2025 relates back to 2019 and is thus untimely. *Ross*, 2017 WL 354178, at *2 (citing *Elmenayer*, 318 F.3d at 134-35).[9]

---

[8] The Court notes a potential split within this Circuit as to this proposition. *Compare Ross* v. *New York*, No. 15 Civ. 3286 (JPO), 2017 WL 354178, at *2 (S.D.N.Y. Jan. 24, 2017) (finding that repeated requests for the same accommodation do not restart the clock), *with Castiblanco* v. *Am. Airlines, Inc.*, No. 17 Civ. 5639 (KAM) (RER), 2019 WL 4751880, at *9 (E.D.N.Y. Sept. 29, 2019) ("[W]hile a new request for the same accommodation might restart the statute of limitations clock, a mere request for reconsideration of a prior denial will not."); *see also Czaja* v. *Delta Airlines*, No. 20 Civ. 1721 (LJV), 2022 WL 409572, at *4 n.6 (W.D.N.Y. Feb. 10, 2022) (comparing *Castiblanco* with *Ross* to note that this issue is unsettled). Because the Court finds that the facts here can be fairly characterized as a "request for reconsideration of a prior denial," *Castiblanco*, 2019 WL 4751880, at *9, the Court's determination that Plaintiff's April 2025 transfer request is time-barred is consistent with both *Ross* and *Castiblanco*.

[9] In any event, Plaintiff fails to state a viable ADA or Rehabilitation Act claim as to the April 2025 conduct. For a failure to accommodate claim under the ADA and Rehabilitation Act, a plaintiff must allege that her employer refused to make the requested accommodations. *See Williams* v. *NYC Health & Hosps. Corp.*, No. 24 Civ. 5467 (LJL), 2025 WL 1334667, at *4 (S.D.N.Y. May 7, 2025). Here, by November 2025, Defendant had fully accommodated Plaintiff's April 2025 request for a clerical position. As such, Plaintiff cannot state a failure to accommodate claim. *See Tillman* v. *N.Y.C. Dep't of Hum. Res. Admin.*, No. 20 Civ. 1153 (MKV), 2022 WL 874947, at *5 (S.D.N.Y. Mar. 24, 2022) ("[D]elay alone does not render an accommodation unreasonable[.]"), *aff'd*, No. 22-872, 2023 WL 2770218 (2d Cir. Apr. 4, 2023) (summary order); *Saunders* v. *Queensborough Cmty. Coll.*, No. 13 Civ. 5617 (PKC) (RML), 2015 WL 5655719, at *7 (E.D.N.Y. Sept. 24, 2015) (determining that seven-month delay in receiving accommodation was not unreasonable). The same is true for Plaintiff's retaliation claim. *See Sarno* v. *Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (confirming that prima facie retaliation claim requires adverse employment action); *Warren* v. *N. Shore Univ. Hosp. at Forest Hills*, 268 F. App'x 95, 98 (2d Cir. 2008) (summary order) (transfer delay does not constitute adverse employment action). A

### 3. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State and Municipal Claims

Having dismissed all of Plaintiff's federal claims under Title VII, the ADA, and the Rehabilitation Act, the Court is left with Plaintiff's claims under the NYSHRL, the NYCHRL, the New York Civil Service Law, and the New York City Civil Service Rules. Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, such jurisdiction is discretionary, *see City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997), and a district court "may decline to exercise supplemental jurisdiction" if the court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).

Both the Supreme Court and the Second Circuit have held that where federal claims are dismissed, particularly early on in litigation before the commencement of discovery, "state claims should be dismissed as well." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 726 (1966)). In line with this guidance,

plaintiff claiming disparate treatment must allege that they were "similarly situated in all material respects" to the individuals with whom they seek to compare themself. *Murtha* v. *N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *12 (S.D.N.Y. Sept. 17, 2019); *see generally Mora* v. *N.Y. State Unified Ct. Sys.*, No. 23-7231, 2026 WL 860572, at *3 (2d Cir. Mar. 30, 2026) (summary order) (discussing adequacy of pleading "similarly situated" comparators). Plaintiff's failure to do so in her FAC or opposition papers thus requires dismissal.

having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and municipal claims.

**CONCLUSION**

While the Court does not wish to minimize any physical, emotional, or financial harm that Plaintiff may have suffered, the Court cannot provide Plaintiff the relief she seeks. Therefore, for the foregoing reasons, the Court grants Defendant's motion to dismiss.

Plaintiff's state and municipal claims are dismissed without prejudice. Plaintiff's federal claims that failed due to her failure to exhaust administrative remedies are dismissed without prejudice. *See Standard Inv. Chartered, Inc.* v. *Nat'l Ass'n of Sec. Dealers, Inc.*, 560 F.3d 118, 124 (2d Cir. 2009). Plaintiff's remaining federal claims are dismissed with prejudice.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: July 31, 2026
New York, New York

KATHERINE POLK FAILLA
United States District Judge